IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL RAY GOLENBERKE, | ) | CASE NO. 1:14 CV 2240 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Daniel Ray Golenberke under 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security denying his

application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the

---

[1] ECF # 10. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 6.

transcript of the administrative record.[4]  Under my initial[5] and procedural[6] orders, the parties

have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have

participated in a telephonic oral argument.[10]

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Golenberke, who was 44 at the time of the administrative hearing,[11] did not graduate

from high school and his past relevant work was as a machine set up operator.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that

Golenberke had the following severe impairments: degenerative disc disease of the

lumbosacral spine, degenerative arthritis of the shoulders, history of conductive hearing loss,

history of hypertension, depressive disorder not otherwise specified, anxiety disorder not

---

[4] ECF # 7.

[5] ECF # 4.

[6] ECF # 8.

[7] ECF # 12 (Golenberke's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 13 at 3-7 (Golenberke's charts); ECF # 24 (Commissioner's charts).

[9] ECF # 13 at 1-2 (Golenberke's fact sheet).

[10] ECF# 28.

[11] *Id.*

[12] *Id.*

otherwise specified, and history of learning disorder with attention deficit hyperactivity disorder.[13]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Golenberke's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (20 CFR 404.1545) to perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and perform overhead reaching; claimant cannot have concentrated exposure to high background noise or hazards such as heights, machinery, or commercial driving; must have a sit/stand option; and he has the mental limitation that he perform simple, repetitive tasks (20 CFR 404.1569a).[14]

The ALJ decided that this RFC precluded Golenberke from performing his past relevant work as a machine set up operator.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Golenberke could perform.[16] The ALJ, therefore, found Golenberke not under a disability.[17]

---

[13] Transcript ("Tr.") at 14.

[14] *Id.* at 20.

[15] *Id.* at 28.

[16] *Id.* at 29-30.

[17] *Id.* at 30.

## C.      Issues on judicial review and decision

Golenberke asks for reversal of the Commissioner's decision on the ground that it

does not have the support of substantial evidence in the administrative record. Specifically,

Golenberke presents the following issues for judicial review:

* The ALJ Failed to Properly Weigh the Medical Evidence.[18]

* The ALJ Failed to Properly Evaluate Mr. Golenberke's Credibility.[19]

For the reasons that follow, I will conclude that the ALJ's decision to not fully credit

the opinion of a treating physician is sufficient to warrant reversing the decision here and

remand the matter for further proceedings.

## Analysis

## A.      Standards of review

## 1.      *Substantial evidence*

As the Sixth Circuit has stated, review of the Commissioner's decision "is limited to

determining whether the Commissioner's decision is supported by substantial evidence and

was made pursuant to proper legal standards."[20]  This standard requires the reviewing court

to affirm the Commissioner's findings if they are supported by "such relevant evidence as

---

[18] ECF # 12 at 17.

[19] *Id.* at 23.

[20] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted).

a reasonable mind might accept as adequate to support a conclusion."[21]  This means that the

Commissioner's decision must be affirmed if supported by substantial evidence even if the

Court would decide the case differently and even if the claimant's position is also supported

by substantial evidence.[22]  An ALJ's failure to follow agency rules and regulations "denotes

a lack of substantial evidence, even where the conclusion of the ALJ may be justified based

upon the record."[23]

### 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to

give more weight to opinions of treating sources than to those of non-treating sources under

appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals most able to provide
> a detailed, longitudinal picture of your medical impairment(s) and may bring
> a unique perspective to the medical evidence that cannot be obtained from
> objective medical findings alone or from reports of individual examinations,
> such as consultative examinations or brief hospitalizations.[24]

---

[21] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

[22] *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

[23] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citation omitted).

[24] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

---

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on

---

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

[42] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

---

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

---

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

The Commissioner has imposed certain standards on the use of evidence from treating medical sources.[72]  As such, the Commissioner's regulations mandate that the ALJ "will" give a treating source's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[73]  If, alternatively, the ALJ decides not to give controlling weight to the opinion of a treating source, various factors must be balanced to determine what weight to give that opinion.[74]

In addition, the Commissioner has imposed a duty on the ALJ to "always give good reasons in [the] notice of our determination or decision for the weight we give [a] treating

---

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

[72] 20 C.F.R. § 416.902.

[73] 20 C.F.R. § 416.927(d)(2).

[74] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

source's opinion."[75] Those "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources medical opinion and the reasons for that weight."[76] As the Sixth Circuit has emphasized, this requirement "is not simply a formality; it is to safeguard the claimant's procedural rights."[77]

## B.      Application of standards

This case centers on the ALJ's handling of the opinion of Dr. Jerome Yokiel, Golenberke's treating physician with a speciality in pain management.

The record shows that Dr. Yokiel treated Golenberke from July, 2010 through January, 2013, during which time Dr. Yokiel conducted nine examinations of Golenberke[78] and rendered two opinions as to his functional capacity.[79] In the most detailed functional capacity assessment, Dr. Yokiel opined that Golenberke could only sit for three hours in an eight-hour workday, as well as stand/or walk for the same period; could occasionally finger, grasp, and handle; could rarely stoop or crouch; had pain that would occasionally interfere

---

[75] 20 C.F.R. § 416.927(d)(2).

[76] Soc. Sec. Rule No. 96-2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996).

[77] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[78] Tr. at 491-92, 494-96, 497, 776, 1003, 1004, 1005, 1390-91, 1392-94.

[79] *Id.* at 1312, 1359.

with attention and concentration; and would be absent four or more days per month.[80] In a later, less detailed opinion, Dr. Yokiel stated that Golenberke was "totally disabled."[81]

Predictably, the ALJ initially found reason to discount the entirety of Dr. Yokiel's opinions because he made a definitive statement in one opinion that Golenberke was "disabled." While it is clearly true that any ultimate finding of disability is reserved to the Commissioner, it is also true that ALJ's frequently resort to this form of "gotcha" reasoning when they cite to this single legal mistake in a treating source's opinion as grounds for discrediting the source's medical conclusions.

In fact, as the Sixth Circuit's opinion in *Gayheart* makes very clear, the treating source opinion is evaluated for support by clinical and laboratory techniques, and for whether it is "not inconsistent with the other substantial evidence in the case record."[82] If the treating source opinion is deficient in these respects, then it will not be given controlling weight and will be further examined under additional criteria to determine the appropriate weight it should receive.[83] In all this, the Commissioner is required to give "good reasons" for the decision to accord the opinion less than controlling weight.[84]

---

[80] *Id*. at 1312.

[81] *Id*. at 1359.

[82] *Gayheart,*  710 F.3d at 375 (internal citation omitted).

[83] *Id.*

[84] *Id*. at 376.

Under that standard, the inclusion of a single legally impermissible statement is not a proper basis by which a complete, specific functional capacity opinion, otherwise supported by clinical evidence and consistent with the medical record, may be devalued. Further, the ALJ's focus here on a solitary legal mistake in one opinion provides no good reason for giving little weight to the specific functional findings contained in another opinion.

The additional reasons cited by the ALJ are equally unpersuasive. In that regard, the ALJ claimed that Dr. Yokiel's functional findings were inconsistent with the objective evidence in this case, in particular evidence that Golenberke has a "stable gait," and with the evidence of his activities of daily living.[85]

But, the records of Golenberke's "stable gait"come largely from physicians who treated Golenberke prior to his treatment with Dr. Yokiel, and, more important, were from sources that were not treating Golenberke for his spinal problems, as was Dr. Yokiel. In addition, as noted by Golenberke, there was never any allegation that he had any difficulties with his gait, but rather Dr. Yokiels's findings concerning limitations on standing, walking and sitting were based on tests showing muscle weakness and reduced range of motion,[86] which tests were supported by an EMG/NCS of the upper extremities that showed moderately severe, subacute to chronic, right cervical radiculopathy and mild left chronic cervical radiculopathy affecting the C5 and C7 nerve roots, and mild impairment of the wrist

---

[85] Tr. at 27.

[86] Tr. at 1312.

-16-

consistent with carpal tunnel syndrome.[87] Further, multiple MRIs show degenerative changes in the cervical and lumbar spine.[88]

Thus, far from being contradicted by outdated and largely irrelevant notes on the stability of Golenberke's gait, Dr. Yokiel's opinions concerning Golenberke's functional limitations are well-supported by the medical, clinical and diagnostic evidence in the record.

Similarly, the ALJ's attempt to cite Golenberke's daily activities as inconsistent with Dr. Yokiel's functional limitations opinion is not a good reason for downgrading the weight given to that opinion. While the record does indicate that Golenberke drives his car, uses the computer, reads a newspaper, waters his plants and plays games on his iPod,[89] none of these activities are demonstrative of what Golenberke is capable of doing in a work environment during a work day. As the Sixth Circuit has expressly cautioned, "somewhat minimal daily functions are not comparable to typical work activity," and too great and simplistic a reliance on such activities frequently "fails to examine the physical effects coextensive with their performance."[90]

Accordingly, the mere fact that Golenberke is capable of performing some minimal activities of daily living such as watering his plants does not state a "good reason" for

---

[87] *Id*. at 559-562.

[88] *Id*. at 467, 479, 481 and 539.

[89] Tr. at 18.

[90] *Rogers*, 486 F.3d at 248-49.

reducing the weight given to the functional capacity opinion of his treating physician, Dr. Yokiel.

For all these reasons, I find that the Commissioner has not complied with the requirements of *Gayheart*, and so has not stated good reasons for downgrading the weight given to Dr. Yokiel's opinion. Thus, the matter must be remanded so that this opinion may be properly evaluated. As part of the reconsideration on remand, the ALJ should consider afresh the other issues raised here by Golenberke that were not addressed because it was unnecessary to an adjudication.

Further, for purposes of any EAJA motion, the Sixth Circuit has held that where the remand is because the Commissioner failed to properly apply the treating physician rule, it is not an abuse of discretion to find the position of the Commissioner was substantially justified and to deny an award of fees.[91]

---

[91] *DeLong v. Comm'r of Soc. Sec.,* 748 F.3d 723, 726-727 (6th Cir. 2014).

## Conclusion

For the reasons stated, I recommend that the decision of the Commissioner denying Golenberke's application for disability insurance benefits be reversed and the matter remanded for further administrative proceedings consistent with this opinion.


IT IS SO ORDERED.

Dated: January 13, 2016                                   s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge